IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JERRELL D. COBURN et al., individually )
and on behalf of themselves and all others )
similarly situated, )
)
    Plaintiffs, )
)
  v. )  No. 03 C 759
)
)  Judge Mark Filip
DAIMLERCHRYSLER SERVICES )
NORTH AMERICA, L.L.C., d/b/a )
CHRYSLER FINANCIAL COMPANY, )
L.L.C., )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Jerrell D. Coburn, Vanessa Dampeer, Cassandra Haynes, Nathan Murray, Elaine Sims, and Eddie Tobias (collectively "Plaintiffs"), bring this action, individually and at least putatively on behalf of others similarly situated, against DaimlerChrysler ("Chrysler" or "Defendant"). Currently, this case is before the Court on Plaintiffs' Motion to Extend the Discovery Deadline. (D.E. 191.[1]) For the reasons set for below, the Court denies the Motion.

### I. PROCEDURAL HISTORY

On February 3, 2003, Plaintiffs' counsel (then led by Edward Vrdolyak, who has since been disqualified) filed two suits against Chrysler: this putative class action and a related case in which a Chrysler dealership sued Defendant alleging that Defendant had adopted an internal corporate policy of refusing to provide financing to non-suburban African-American car buyers

---

[1] Citations to the docket entries are designated "D.E.," followed by the appropriate docket number. All docket entries relate to the record in this case, Case No. 03 C 759, unless otherwise noted.

regardless of their creditworthiness, *Ridge Chrysler Jeep L.L.C. v. DaimlerChrysler Services North America, L.L.C.*, No. 03 C 760 (N.D. Ill. filed Feb. 3, 2003) ("*Ridge*"). *Coburn* was assigned to Judge Castillo and later transferred to this Court, while *Ridge* was assigned to Judge Andersen, who ordered that discovery be supervised by Magistrate Judge Keys. (D.E. 47 in Case 03 C 760.) Despite the differences between the two cases, a considerable amount of the factual allegations, and hence much of the discovery, is identical and overlapping. (*See, e.g.*, D.E. 193, Ex. 8, Ex. 9). (In fact, multiple depositions were cross-noticed, and at least some of the document productions were designated to apply in both cases. *See, e.g.*, D.E. 193, Ex. 8, Ex. 9.)

In October 2003, the court in *Ridge* set December 10, 2004, as the discovery cut-off date (*id.*, Ex. 10), and in February 2004, Judge Castillo in the instant case set November 30, 2004, as the discovery cut-off date (*id.*, Ex. 11). Subsequently, and at the request of (or at least the acquiescence of) all parties, on November 24, 2004, this Court extended the discovery deadline in *Coburn* to December 10, 2004, such that it conformed to the deadline in *Ridge*. (*Id.*, Ex. 12.)

On November 12, 2004, counsel for the *Ridge* plaintiffs (who also represent the Plaintiffs in this case) sought an extension of the discovery cut-off date in *Ridge* on behalf of the *Ridge* plaintiffs. (*Id.* at 6.) As with the instant case, Defendant and its counsel opposed the motion, arguing that lack of diligence by plaintiffs and their related failure to show good cause precluded any amendment to the established discovery schedule. (*Id.*) Judge Keys soundly rejected the request for a discovery extension because of plaintiffs' inability to demonstrate that good cause existed for the extension:

> My interest is what has happened—what . . . have the plaintiffs done in regard to scheduling—depositions since September of last year. I don't see very much. . . . [N]othing happened until November 5th [2004]. That's the way it appears anyway. [. . .

2

.] Correct me if I am wrong . . . because all I have seen up until this time . . . was [] some down time there. . . . [T]here was a lot of lawyers in this case on your side. And what have they been doing?

(*Id.* at 6-7 (citing Ex. 6 at 3, 5-6).) Furthermore, Judge Keys stated that he "look[ed] . . . to see what [Plaintiffs' counsel had] really done before November 5th [2004], and I don't see very much." (*Id.* at 7.) Judge Keys also concluded that although Plaintiffs' counsel had taken and defended several depositions, "it didn't appear that [they] were aggressively trying to get dates for these depositions. And I can't reward that kind of conduct, especially over the objection of the other side." (*Id.* at 14.) One week later, plaintiffs again requested that Judge Keys extend the discovery deadline in *Ridge*, and once again Judge Keys denied the request. (*Id.* at 7.)

In front of this Court, Plaintiffs have similarly requested an extension of the discovery cut-off, arguing that "documents and deposition discovery are not yet complete," in part because "some of the recent depositions of Chrysler Financial employees reveal additional avenues of investigation that Plaintiffs seek to pursue."[2] (D.E. 191 ¶3.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 16 makes clear that a judicial schedule "shall not be

---

[2] Plaintiffs maintain that Defendants wrongly rely on *Ridge*, since *Coburn* involves, *inter alia*, redlining allegations and *Ridge* concerns a business dispute and there "is not complete overlap between the cases." (D.E. 191 at 4.) While the Court appreciates the differences between the two cases, the Court recognizes that considerable similarity exists between the two, at least in terms of the relevant discovery universe. In this regard, it is noteworthy that one of the principal evidentiary bases for Plaintiffs' responses to the summary judgment motions filed by Defendant in this case (indeed, the first evidentiary exhibit to the Rule 56 Responses) was a copy of the fifty-four-page verified complaint in *Ridge*. Plaintiffs relied heavily on that verified complaint, and it was significant in the summary judgment analysis. Judge Keys's discovery opinion in *Ridge*, while obviously not controlling, is instructive in getting a fuller understanding of the course of discovery in this litigation. Although this Court's ruling is not dependent on Judge Keys's rejection of plaintiffs' request for additional discovery in *Ridge*, this Court agrees with Judge Keys than an extension would be inappropriate under the circumstances presented.

modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). "Neither the parties nor their counsel have the authority to stipulate or otherwise agree" to alterations of the Court's orders without also procuring the Court's approval. *Olgyay v. Soc'y for Envtl. Graphic Design, Inc.*, 169 F.R.D. 219, 219 (D.D.C. 1996). For a party to satisfy the "good cause" requirement, he must demonstrate that he "exercised 'due diligence' in failing to meet the court's deadline." *See Humphrey v. East Mfg. Corp.*, No. 98 C 50413, 2003 WL 21361780, at *4 (N.D. Ill. June 11, 2003) (citing *Trustmark Ins. Co. v. General Cologne Life Reinsurance of Am.*, No. 00 C 1926, 2001 WL 1268539, *14 (N.D. Ill. Oct. 22, 2001). A decision of whether to extend discovery or not, or concerning the scheduling of discovery, is committed to the sound discretion of the district court, which must try to fashion a sensible and fair result under the circumstances presented. *See, e.g., Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 741 (7th Cir. 1998) (finding that "the district court acted well within its discretion in setting the schedule it did and in requiring the adherence of the parties to that schedule"); *DeWindt Corp. v. Scottsdale Ins. Co.*, 110 F. Supp. 2d 700, 702 (N.D. Ill. 2000) ("The pace of litigation, the nature of the discovery, the degree to which schedules are honored are all matters within control of the trial judge.").

## III. DISCUSSION

Plaintiffs do not disagree with the legal standard set forth above. Rather, Plaintiffs maintain that they have "actively prosecuted" the case by participating in almost two dozen depositions since November 30, 2004, attending 69 days of depositions since the February 10, 2004 scheduling order, and engaging in a host of meetings, interviews, and briefing. (D.E. 197 at 1-2.) Plaintiffs also maintain that discovery was impossible for much of the last year because the

4

parties believed that discovery stays were in place twice in the life of these two related cases. In *Ridge*, Magistrate Keys "effectively halt[ed] offensive discovery" by Plaintiffs until they presented Gerald Gorman for a deposition. (*Id.* at 2.) In *Coburn*, the parties apparently believed that discovery was stayed while the parties litigated Chrysler Financial's disqualification motion regarding Plaintiffs' counsel, including Plaintiffs' former lead counsel, Edward Vrdolyak. (*Id.* at 6 n.1.) With all due respect, neither of these arguments convinces that Court that Plaintiffs have been duly diligent such that it is appropriate to extend the discovery cut-off.

The parties have had over one year to conduct their discovery. Despite Plaintiffs' contention to the contrary, they have not worked diligently. Plaintiffs offensively took only five depositions in *Coburn* before November, 2004, and all five took place in December 2003. Thus, as in *Ridge*, for the first ten-plus months of 2004, Plaintiffs seem to have done nothing concerning discovery in *Coburn*. It is not persuasive that they participated in a variety of meetings and status conferences, as well as drafted a variety of briefs and worked with a potential expert witness. The motion at issue concerns discovery taken by Plaintiffs, and the relevant schedule was a discovery schedule. A case moves on multiple levels (oftentimes, the parties are concurrently engaged in briefing, evidentiary discovery, privilege disputes, settlement discussions, meetings and status conferences, and expert witness work, or some combination of most of those things) and activity on one plane does not necessarily satisfy the deadlines and requirements on another. Quite simply, Plaintiffs have not been reasonably diligent in their discovery-taking practices.[3] Therefore, for the purposes of *Coburn*, the Court agrees with Judge

---

[3] Plaintiffs contention that they have participated in dozens of depositions covering sixty-nine days over the past year is unavailing and misleading. (D.E. 197 at 1, 3-4.) First, these numbers appear to be inflated. (D.E. 199 at 5.) More importantly, Plaintiffs admit that in this

5

Keys's assessment in *Ridge*: Plaintiffs and their counsel did little in terms of offensive discovery during the many months of the discovery period prior to November 2004; a tremendous amount of "down time" existed; and the Court does not find reasonable diligence under the circumstances. (*See* D.E. 193, Ex. 6 at 6.)

Nor does the existence of the ostensible discovery stay help Plaintiffs. First, any "stay" in *Coburn* occurred in mid-2003, and by September 30, 2003, Judge Castillo made clear that there was no stay pending and that the parties were to proceed with discovery. Thus, this "stay" in no way implicated Plaintiffs' failure to conduct little meaningful offensive discovery during the first 300 days of 2004. Furthermore, the discovery stay in *Ridge* did not impact Defendant's obligations in the instant case. That stay implicated only two individuals: third party dealers Fitzgibbon and Christopoulos. It did not affect Plaintiffs' ability to conduct offensive discovery in general. (D.E. 197, Ex. A at 4.) Moreover, these depositions have already been taken in *Ridge*, and the parties have subsequently taken the depositions of Fitzgibbon and Christopoulos in *Coburn*. (*Id.* at 4.) (It also appears likely that the two dealers were accessible to Plaintiffs, as they are aligned with Mr. Gorman, who is represented by Plaintiffs' counsel.) Plaintiffs have not demonstrated any compelling correlation between any potential or implied stay of discovery and any good cause justification for extending discovery.

Nor can Plaintiffs hope to succeed in their motion by using an argument of mistake, surprise, or forgetfulness. It is clear that Plaintiffs consciously opted to delay their discovery

---

entire case, until November 2004, they had taken only five depositions, and they took none between January 2004 and November 2004.

6

despite repeated reminders about the date of the discovery cut-off.[4] In addition to regularly dealing with discovery issues in the rulings of Judges Keys and Castillo, Plaintiffs even received assistance and reminders from Defendant about scheduling times for Plaintiffs to take depositions, as well as the (then) upcoming discovery cut-off. Specifically, on May 13, 2004, Plaintiffs' counsel sent a letter to Defendant's counsel stating that Plaintiffs wanted to "schedule dates as soon as possible" for several Chrysler Financial executives and employees. (D.E. 199 at 9.) However, Plaintiffs did not pursue the matter further. Consequently, on August 2, 2004, Defendant's counsel sent an email to Plaintiffs' counsel reminding them that "discovery ends on December 10, 2004," speculating that "there are several people [Plaintiffs] intend to depose," and requesting that Plaintiffs "let [Defendant's counsel] know who at Chrysler Financial [Plaintiffs] want to depose so that we can coordinate with them to find available dates for the depositions." (*Id.*) Plaintiffs responded with silence; not until November 5, 2004, did Plaintiffs follow up and actively attempt to schedule depositions. (*Id.*) Plaintiffs have not provided any persuasive explanation for the delay. Given the various promptings and reminders from the *Ridge* and *Coburn* courts, as well as the opposing party, Plaintiffs' failure to undertake little if any discovery activity is fatal to their claim of diligent discovery practice.

Relatedly, Plaintiffs' briefing suffers from a lack of clarity concerning what they hope to achieve with additional discovery. This is troubling to Plaintiffs' case, since "the focus of [a court's] inquiry is upon the moving party's reasons for seeking modification." *Johnson v.*

---

[4] Judge Keys made a similar conclusion in *Ridge*, when he ruled that plaintiffs' waiting until the final six weeks of the thirteen month discovery period to conduct discovery was a "tactical decision" of which the plaintiffs had to "endure the harsh results." *Ridge Chrysler Jeep L.L.C. v. DaimlerChrysler Svcs. N. Am.*, 03-C-760, 2004 WL 3021842, at *6 (N.D. Ill. Dec. 29, 2004).

7

*Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003). Moreover, to the extent the Plaintiffs propose possible additional discovery areas (which they only do in their reply brief, itself procedurally improper), Plaintiffs have not identified individuals whose depositions they diligently attempted to take but were precluded from so doing prior to the discovery cut-off.

Furthermore, extending discovery at this juncture would unduly prejudice Defendant. At this stage of the litigation the case is ready to move forward into any final summary judgment motion for the newly-added Plaintiff and an evaluation of class certification. Extending discovery would delay that entire process after Plaintiffs have had a fair opportunity to proceed and would place upon Defendant the unnecessary burdens associated with belated discovery that was available long ago. Furthermore, reopening discovery now, in light of Judge Keys's ruling in *Ridge*, might allow Plaintiffs to circumvent the *Ridge* discovery cut-off by using the extra discovery in *Coburn* to acquire the information they were unable to collect in *Ridge*.

Finally, Plaintiffs allege that in the spirit of cooperation their motion should be granted because "Plaintiffs' counsel was [earlier] lulled into the mistaken belief that Defendant would cooperate if a modest extension of discovery was necessary." (D.E. 197 at 7.) The Court, with all due respect, disagrees. For one, nothing in Plaintiffs' briefs demonstrates that an extension is "necessary." Furthermore, Plaintiffs provide no evidence of any agreement to extend the discovery cut-off date generally. Instead, the evidence suggests that the parties made specific arrangements concerning limited issues. The Court will not interfere with those mutual arrangements. However, no agreement for a general extension appears to ever have been put in

place, and Plaintiffs have not demonstrated that it is warranted. (D.E. 199 at 13-14.) In summary, this Court concurs with Judge Keys that no extension is warranted, and the Court will not grant the requested 90-day extension where it is not justified and where it is the subjection of an objection from a party.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion to extend discovery is denied.

So Ordered.

*Mark Filip*
Mark Filip
United States District Judge
Northern District of Illinois

Dated: *April 13, 2005*